NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

----------------------------------------------------------------X

In re:                                    Bankruptcy Case No. 18-30155

388 Route 22 Readington Holdings, LLC     Chapter 7

               Debtor

                                    **MEMORANDUM OPINION**

----------------------------------------------------------------X

<u>**APPEARANCES**</u>

Bunce D. Atkinson, Esquire
Coast Capital Building
1011 Highway 71, Suite 200
Spring Lake, New Jersey 07762
Bunce D. Atkinson, Chapter 7 Trustee

Andrew J. Kelly, Esquire
The Kelly Firm P.C.
1011 Highway 71, Suite 200
Spring Lake, New Jersey  07762
Special Counsel / Attorneys for Chapter 7 Trustee, Bunce D. Atkinson

Jay L. Lubetkin, Esquire
Rabinowitz, Lubetkin & Tully, LLC
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
Counsel to SB Building Associates Limited Partnership

Lawrence S. Berger, Esquire
Berger & Bornstein
237 South Street
PO Box 2049
Morristown, New Jersey 07962

## Memorandum Opinion

On November 5, 2020, the court took oral argument on three applications for compensation: 1) Chapter 7 trustee's request for a commission under § 326(a)[1]; 2) Second Application for Compensation for trustee's attorney Atkinson & DeBartolo, P.C.[2]; and 3) First Application for Compensation for trustee's attorney The Kelly Firm, P.C.[3] SB Building Associates Limited Partnership[4] filed numerous objections to the Second Application for Compensation.[5] Those objections were joined by Lawrence Berger, Esq.[6] On October 16, 2020, SB Building filed a combined objection[7] to all three fee applications, which also included an objection to fees[8] previously awarded to Atkinson and DeBartolo on September 26, 2019. On October 30, 2020, Bunce Atkinson filed a response to the objections on behalf of his former firm and himself as trustee,[9] and Andrew Kelly filed a response on behalf of The Kelly Firm.[10] Lawrence Berger filed a reply on November 3, 2020.[11] At the close of oral argument, the court reserved decision.

---

[1] Doc 209; Doc 211 (corrected application)
[2] Doc 187; Doc 189 (corrected application); Doc 204 (further corrected application)
[3] Doc 208
[4] SB Building Associates Limited Partnership is the 100% equity owner of the Debtor
[5] Doc 203; 214; 216; 220
[6] Doc 217. Lawrence Berger is the manager member of the Debtor. He is also the President of United States Realty Resources, Inc., the general partner of United States Land Resources, L.P., which, according to Mr. Berger, "directly or indirectly" owns and controls SB Building Associates Limited Partnership. Mr. Berger also served as special counsel to the Trustee in this case.
[7] Doc 216
[8] Doc 76 (First Interim Application for Compensation)
[9] Doc 219
[10] Doc 218
[11] Doc 220

Trustee commission

The court will first consider the chapter 7 trustee's request to be paid his statutory commission under § 326(a). In the application, the chapter 7 trustee seeks an award of trustee fees pursuant to 11 U.S.C. 330(a)(7) and 11 U.S.C. 326(a) in the amount of $116,737.45 together with costs of $49.85. SB Building Associates Limited Partnership, joined by Lawrence Berger, (collectively "Objectors") objected as part of the combined objection filed on October 16, 2020.[12]

The objections to the payment of the Trustee's full statutory commission are intertwined with the objections to the Trustee's law firm's fee application and the Objectors maintain that the two must be considered in tandem. Nonetheless, there are certain purely legal issues that underly the objections to the Trustee's commission; therefore, the court will attempt to isolate the legal issues and address those first.

The Objectors specific objection to the Trustee's commission request is that the "Trustee's commissions should be based upon the time actually spent…."[13] In other words, the Objectors want the court to disregard the commission established by Congress in 11 U.S.C. § 326(a) and instead apply a lodestar approach.[14]

The Bankruptcy Code authorizes the court to award a chapter 7 trustee reasonable compensation for actual, necessary services and reimbursement of

---

[12] Doc 216

[13] *Further Supplemental* Objection at 11 [Doc 216]

[14] *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 199 (3d Cir. 2000) (a court determines the lodestar by multiplying the number of hours counsel reasonably worked on a client's case by a reasonable hourly billing rate for such services in a given geographical area provided by a lawyer of comparable experience.")

actual and necessary expenses.[15] Historically, chapter 7 trustee compensation was determined by a lodestar analysis and applying the § 330(a)(3) factors; however, in 2005, the Bankruptcy Abuse Prevention and Consumer Protection Act ("BACPA") amended § 330 in a way that challenged the application of the lodestar analysis when determining reasonable compensation for a chapter 7 trustee. Specifically, BACPA added § 330(a)(7), which states: "In determining the amount of reasonable compensation to be paid to a trustee, the court shall treat such compensation as a commission, based on § 326."

Many courts, including all of the Circuit Courts of Appeals to have considered the issue, have found that this additional language, combined with the corresponding removal of chapter 7 trustees from the list of professionals identified in § 330(a)(3), indicated a Congressional intent to remove chapter 7 trustee compensation from the traditional lodestar analysis, and convert it to a straight commission as set forth in § 326. *See, e.g., Matter of JFK Capital Holdings, L.L.C.*, 880 F.3d 747 (5th Cir. 2018); *Mohns, Inc. v. Lanser (In re Wilson)*, 522 B.R. 594, *aff'd sub nom In re Wilson*, 796 F.3d 818 (7th Cir. 2015); *In re Rowe*, 750 F.3d 392 (4th Cir. 2014); *Hopkins v. Asset Acceptance LLC (In re Salgado-Nava)*, 473 B.R. 911 (9th Cir. BAP 2012). This Court agrees with the reasoning in those cases and, for the reasons that will be discussed, holds that under § 330(a)(7), the graduated percentage commission of § 326 must be considered a presumptively reasonable

---

[15] 11 U.S.C. § 330(a)(1)

compensation for a chapter 7 trustee and, in all but the most extraordinary cases,

courts should not apply an hourly rate lodestar analysis.

The Objectors arguments are not wholly consistent. The arguments vacillate

between advocating for the position that even after the addition of new

subparagraph (7) courts have substantial discretion to deviate from the formula in §

326, to seemingly acknowledging that § 326 controls and that courts may only

adjust a trustee commission in exceptional cases. In their reply dated November 3rd,

the Objectors urge the court to adopt the position taken by the District Court in *In*

*re Ward*.[16] In that case, the court held:

> Unlike the Trustee, I believe that, even post-BAPCPA, bankruptcy
> courts retain substantial discretion to make a "reasonableness"
> determination taking into account relevant factors including not
> just the maximum allowable award under § 326(a), but also—in
> appropriate cases—the time and effort expended by the trustee on
> the case. Unlike the Trustee, I do not believe that this discretion is
> limited to only the most exceptional cases, nor do I believe that the
> types of considerations enumerated in § 330(a)(3) can never be taken
> into account.[17]

This court finds the holding in *Ward* unpersuasive for several reasons.

Preliminarily, it is important to note that *Ward* was largely premised on the

reasoning in *In re Coyote Ranch Contractors, LLC*[18] which was abrogated by the

Fifth Circuit.[19] Second, the holding in *Ward* has not been followed in more recent

cases.[20] Finally, and most importantly, imposing a reasonableness analysis on the

---

[16] 418 B.R. 667 (W.D. Pa. 2009)
[17] *Ward* at 678
[18] 400 B.R. 84, 95 (Bankr. N.D. Tx 2009)
[19] *Matter of JFK Capital Holdings, L.L.C.*, 880 F.3d 747 (5th Cir. 2018)
[20] *See, e.g., In re Lally*, 612 B.R. 246, 249–50 (Bankr. D.N.H. 2020)

commission set forth in § 326 renders the addition of § 330(a)(7) a nullity: It makes § 330(a)(3) the starting point of an analysis of a trustee's commission rather than § 326(a). The plain language of § 330(a)(7) permits no such interpretation; it states that the court "shall" treat chapter 7 trustee compensation as a commission "based on section 326." A commission by its very nature is not tethered to the number of hours expended. In another case relied on by the Objectors, *In re Clemens*[21], the court held that even after the addition of § 330(a)(7) a court still needs to determine the amount of that 'commission' and should do so by applying the lodestar approach for deciding reasonableness. For the reasons already stated, this court finds that superimposing a loadstar analysis on § 326 is improper. The court also finds it telling that in reaching its conclusion, the *Clemens* court admitted it "is aware that its holding may mean that the terms of § 330(a)(7) have a small impact on pre-BAPCPA practice in awarding Trustees fees [and] [t]o some extent this might conflict with the general rule of statutory interpretation that a Court should avoid surplusage." *Id.* at 731.

That does not mean that this court takes the position that reasonableness has no role; rather, that the percentage commission set forth in § 326 must be the starting point. The changes to trustee compensation brought about by BAPCPA did not write reasonableness out of the Code. At the end of the day, whatever commission is awarded to a trustee must be reasonable because that word is contained in §§ 330(a)(1), 330(a)(7) and 326. But the way reasonableness comes into

---

[21] 349 B.R. 725 (Bankr. D. Utah 2006)

play is not by ignoring the express terms of § 330(a)(7), but rather by deviating from the commission only in the rare cases when the amount of the commission is offensive based on the particular circumstances of a case. Indeed, the presumption that the § 326 commission is reasonable is not a guarantee, and courts retain the right under § 330(a)(2) to reduce the commission to less than the statutory maximum in extraordinary circumstances. As noted by the Fourth Circuit in *Rowe*, "§ 330(a)(7) creates a presumption, but not a right, to a statutory maximum commission-based fee for Chapter 7 trustees. But still, the starting point for deciding Chapter 7 trustee compensation is always the commission rate to which the trustee would normally be entitled had no extraordinary circumstances existed."[22]

The Objectors argue that the "Trustee now asks the Court to give him a "bonus" without establishing any rare and exceptional performance."[23] That is incorrect; the Trustee is not seeking a "bonus," he is seeking the commission provided for in § 326. The court will now, accordingly, address the allegations that this is one of the rare cases in which extraordinary circumstances justify deviating from the statutory commission. The Fifth Circuit has noted that "[w]hile we recognize that Section 330 still allows a reduction or denial of compensation, this should be a rare event. We acknowledge that exceptional circumstances can alter the compensation, but "exceptional" is the key."[24]

---

[22] *In re Rowe*, 750 F.3d 392, 398 (4th Cir. 2014)
[23] *Further Supplemental Objection* at 4 [Doc 216]
[24] *Matter of JFK Capital Holdings, L.L.C*, 880 F.3d 747, 756 (5th Cir. 2018)

In a recent case, parties urged the court to find that the case was a "rare and unusual" one that justified a downward deviation from the maximum commission because virtually all of the funds available for distribution were the proceeds of a personal injury claim that was litigated and settled by special counsel, and not by the trustee.[25] The *Lally* court rejected that argument noting that such a situation was not rare or unusual in a chapter 7 case. The court explained that were it to adopt the position that proceeds resulting from legal services provided by a professional retained by the trustee should be excluded from a trustee's commission "it would undermine the presumption of reasonableness that § 326 affords."[26]

The Objectors make a similar argument here[27] and the court rejects it for the same reasons expressed in *Lally*; that is, that the Trustee's actions in this case were neither rare nor unusual. The Trustee retained a broker to market the property, but when the broker failed to produce a reliable contract for sale the Trustee retained an auctioneer to sell the property. Those actions are precisely what section 704 of the Bankruptcy Code envisions when it states that a trustee shall "reduce to money the property of the estate for which such trustee serves."[28] The Objectors displeasure with the auction results does not transform this case into an exceptional one.

---

[25] *In re Lally*, 612 B.R. 246 (Bankr. D.N.H. 2020)
[26] *Id.* at 251
[27] "In the matter before the Court, the Trustee simply employed an auctioneer (and paid it over $200,000 to sell the Property) and let the chips fall where they may." *Further Supplemental Objection* at 23 [Doc 216]
[28] 11 U.S.C. § 704(a)(1)

By comparison, the Fifth Circuit, in *Matter of King*, affirmed the bankruptcy court's reduction of a trustee's commission.[29] In that case, the bankruptcy court found that exceptional circumstances existed based on its express finding that the trustee had violated his fiduciary duty to the estate by allowing his firm to seek illegitimate fees from the estate.[30] Here, the court has not been presented with any evidence of that nature. The Objectors are merely presenting the court with recycled arguments it has heard and rejected in other contexts. For example, the Objectors once again argue that the Trustee acted improperly by failing to act on a $5.1 million offer, but as part of approving the sale motion this court has already found that offer was illusory because of its myriad contingencies. Similarly, the Objectors once again put forward their opinion that holding the auction in December chilled the bidding, but this court has already found that not to be the case.

The court is also unpersuaded by the Objectors belief that the Trustee's commission should be reduced because it is too high in comparison to the work performed by the Trustee. As the court in *Mohns* noted, a focus on disproportionality is misguided because:

> other than the formula in § 326, the Code contains no guidance as to what constitutes "proportionate" compensation. Thus, when a judge reduces a commission that he or she deems disproportionate for some reason, the judge necessarily applies his or her own conception of how trustees should be compensated rather than any policy adopted by Congress. The better approach is for a court to simply apply the formula in § 326 and leave it to Congress to amend the statute if it decides that the current system results in over-

---

[29] 802 F. App'x 133 (5th Cir. 2020)
[30] *Id.* at 137

compensation of Chapter 7 trustees.[31]

The *Mohns* court also explained that by use of the word "commission" Congress was

obviously aware that a trustee commission under § 326 would not be directly tied to

the hours expended. Moreover, allowing commissions was at least, in part, intended

to compensate trustees for the work performed in no asset cases thus attracting a

talented and experienced pool of trustees which benefits all creditors. That

understanding of the commission construct is shared by other courts. As explained

in *Scoggins*:

> While it is axiomatic that chapter 7 trustee compensation for no-
> asset cases ($60 per case under § 330(b)) was never intended to be
> "reasonable" compensation for no-asset cases, Congress designed
> compensation for asset cases under § 330(a) to be sufficiently
> generous so as to fill the gap by subsidizing no-asset cases. The
> theory is that the U.S. trustee, who selects, assigns, and supervises
> trustees, will assign a portfolio of asset and no-asset cases that will
> on average reasonably compensate a trustee.[32]

Overall, the court finds that nothing about this case, the trustee's actions, or

the auction results make this case extraordinary. The Objectors have presented no

new information that would lead this court to conclude that the trustee in this case

deviated from the professional standards of a trustee thereby justifying the court

reducing his statutory commission.

The only arguably extraordinary thing about this case is the Objectors'

unrelenting adherence to their false, self-serving narrative. Apparently it must be

said again that the property that was sold by the Trustee, that they imagine to be

---

[31] *Mohns, Inc. v. Lanser*, 522 B.R. 594, 601 (E.D. Wis.), *aff'd sub nom. In re Wilson*, 796 F.3d 818 (7th Cir. 2015)

[32] *In re Scoggins*, 517 B.R. 206, 218 (Bankr. E.D. Cal. 2014) (footnote omitted)

worth $12 million dollars,[33] was not fully in the Debtor's control when this

bankruptcy case was filed. The Objectors would like the court to believe that they

are writing on a blank slate. They are not. The long history began more than 11

years ago when SB Building Associates first defaulted on its mortgage payments to

Iron Mountain. Iron Mountain initiated a foreclosure proceeding as far back as

2009. Iron Mountain has had a final foreclosure judgment since as far back as 2011.

The only reason the property was not sold at a foreclosure sale was because the

Debtor filed its first bankruptcy on the day of the sale. The Debtor confirmed a plan

of reorganization in that case[34] that provided for $2,200,000 in total payments to

Iron Mountain for its secured claim, including a $1,325,000 lump sum payment due

before January 15, 2016. The Plan also provided that, if the Debtor failed to make

that lump sum payment, the Debtor must make a balloon payment before January

1, 2018 of all outstanding principal and interest. The Debtor failed to make either

the lump sum or the balloon payment. Of vital importance to understanding this

case, and the self-serving narrative that the Objectors are advancing, are the

consequences included in the confirmation order if the Debtor failed to make

payments in accordance with the terms of its plan of reorganization. The

Confirmation Order provided that in the event of default, "(i) . . . all obligations

owing to [Iron Mountain], including principal and all accrued and unpaid interest,

fees, costs, charges and attorney's fees, shall accelerate and become immediately

---

[33] The Objectors put forth as "evidence" of the Trustee's subpar results in the case the fact
that 7 months after the auction sale the property is listed for $12 million. A mere listing
price is not probative evidence of actual value.
[34] 13-26699 MBK

due and payable; and (ii) [Iron Mountain] shall be permitted (a) to proceed with any and all legal rights and remedies in accordance with the Judgments, the secured lien, the Plan and the law."[35] The Confirmation Order further provided that in the event of default the Debtor "shall consent to, relief from any automatic stay imposed by § 362 of the Bankruptcy Code …." When the Debtor filed its second Chapter 11 petition in 2017, Iron Mountain immediately filed a motion seeking prospective relief from the automatic stay based on the continued chicanery of the Debtor, SB Building, and associated entities. Despite agreeing in its previous bankruptcy to consent to stay relief in any future bankruptcy, the Debtor opposed Iron Mountain's request for stay relief in the second bankruptcy filing.[36] At the hearing on the motion, Lawrence Berger argued to Judge Kaplan[37] that he should not have to abide by what he agreed to in his first bankruptcy case because it amounts to an unenforceable *ipso facto* clause. Judge Kaplan disagreed stating that he had no doubt that the waiver of the automatic stay was an integral part of why Iron Mountain consented to the Plan. Moreover, Judge Kaplan found that enforcing that waiver in the second bankruptcy filing would not violate public policy and was appropriate on numerous grounds including res judicata and judicial estoppel.[38]

---

[35] Order Confirming Second Modified Plan of Reorganization [Doc 158] in case 13-26699
[36] The Debtor also failed to comply with other provisions of the confirmation order in the first case, such as cooperating with Iron Mountain in the state court.
[37] The case was reassigned to Judge Ferguson on 6/5/19
[38] Transcript of November 19, 2018 hearing at 30 – 32 [Doc 58]

Judge Kaplan entered orders that granted stay relief effective 60-days from the date

of the order, and converted the case to chapter 7.[39]

This long history is necessary to make the point that this property was only

able to be sold by the chapter 7 trustee because Judge Kaplan allowed a 60-day

window in which it would hold Iron Mountain's stay relief in abeyance so that the

newly appointed chapter 7 trustee could familiarize himself with the case and

decide if the property had any value for the bankruptcy estate. Further agreements

between the Trustee and Iron Mountain to extend the automatic stay are what

ultimately led to the auction sale of the property in December 2019 and produced

the pot of money to pay creditors in full and produce a small return for the Debtor.

Because this Debtor had agreed to future stay relief back in 2015, the auction of

this property (as opposed to a sheriff's sale, which would have resulted in a return

to no one but Iron Mountain) was a gift to the Debtor. Yet, the Objectors want to

use the Trustee's alleged mismanagement of this sale (that essentially created

something from nothing) as the basis for denying the Trustee his statutory

commission. The court is aware that SB Building Associates Limited Partnership

has filed an appeal of the sale order with the Third Circuit, but no stay pending

appeal of the sale was granted[40] and this court must view the facts as they are

presently and not how the Objectors fervently wish them to be.

The objections are overruled. The court grants the Trustee the full statutory

---

[39] The Debtor appealed both orders and the District Court dismissed the appeal of the order granting stay relief [Doc 82, 83]
[40] A request for a stay pending appeal was denied by the Bankruptcy Court, District Court and Third Circuit Court of Appeals.

commission and expenses as requested. The Objectors argument that some of the
services the Trustee has included in his request for attorney fees should be
considered trustee functions and thus part of his commission will be considered as
part of the objection to the fee applications of the trustee's attorney Atkinson &
DeBartolo, P.C..

Trustee's request for future commission

In addition to commission already addressed, the Trustee is "also seeking
that the Order provide that without further order of the Court I am entitled to
receive and authorized to pay a commission of 3% of the disbursements made for the
administrative expenses awarded to Atkinson & DeBartolo, P.C. and The Kelly
Firm, P.C. for attorney fees and costs, and for the distribution to W.J . Casey
Trucking & Rigging Co."[41]   The order dismissing this case required that the Trustee
hold $70,000 in escrow for the unsecured creditor W.J. Casey Trucking & Rigging
Co., Inc., to be disbursed as set forth in the Order.

Section 326 provides that a trustee is entitled to a commission "upon all
moneys disbursed or turned over in the case by the trustee to parties in interest …."
11 U.S.C. § 326(a). W.J. Casey Trucking & Rigging Co. is an unsecured creditor of
this estate and is indisputably a party in interest, thus, any distribution to it would
fall within § 326.[42] The term "party in interest" is not defined in the Code. The term
is used in § 1109, regarding the right to be heard in Chapter 11 cases, and the

---

[41] Doc 209 at para. 17
[42] Although the case was dismissed prior to the distribution to W.J. Casey, the court
retained jurisdiction over all requests for commissions, fees, and expenses in the Order
Dismissing Chapter 7 Case. [Doc 202]

section lists numerous examples of parties in interest, but that list does not include an attorney representing a trustee. The Third Circuit has defined a "party in interest" as one who "has a sufficient stake in the proceeding so as to require representation."[43] The Third Circuit has also adopted the definition of a "party in interest" expressed by the United States Court of Appeals for the Seventh Circuit as "anyone who has a legally protected interest that could be affected by a bankruptcy proceeding."[44] An attorney representing a trustee does not fall within the ambit of either definition. The Trustee has not cited the court to any case in which the basis for a commission included fees paid to a trustee's professionals. Even if he had, the court would reject such cases as inconsistent with the Third Circuit's understanding of a party in interest in bankruptcy and as inappropriate double-dipping.[45]

The request for a 3% commission on any funds ultimately disbursed to W.J. Casey Trucking & Rigging Co., Inc. is granted. The request for a 3% commission on any funds distributed to the trustee's professionals is denied.

Atkinson & DeBartolo's requests for compensation

Atkinson & DeBartolo, P.C. filed a Second Application for Compensation for the trustee's attorney in the amount of $56,900.00 and expenses in the amount of $247.25.[46] The Objectors sought reduction of that request, and additionally asked

---

[43] *In re Amatex Corp.*, 755 F.2d 1034, 1042 (3d Cir.1985)
[44] *In re Glob. Indus. Techs., Inc.*, 645 F.3d 201, 210 (3d Cir. 2011) (*quoting, In re James Wilson Associates*, 965 F.2d 160, 169 (7th Cir.1992))
[45] In this case, the Trustee hired his former law firm, Atkinson & DeBartolo, P.C., as his attorney and he hired his current law firm, The Kelly Firm, P.C., as his special counsel.
[46] Doc 187; Doc 189 (corrected fee application); Doc 204 (further corrected fee application)

15

the court to reconsider fees and expenses previously awarded to Atkinson & DeBartolo. The court will first consider the current application.

## Second Application for Interim Compensation

While this court ruled that a trustee is entitled to a presumption of the reasonableness of his commission, his counsel is not entitled to the same presumption. Section 330(a)(1) provides that a professional retained by the estate is entitled to "reasonable compensation for actual, necessary services" and "reimbursement for actual, necessary expenses."[47] The applicant bears the burden of proving the necessity of its services and the reasonableness of its fees.[48] The Bankruptcy Code itself provides the standard for determining reasonableness. Section 330(a)(3) of the Bankruptcy Code provides that:

> the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
> a. the time spent on such services;
> b. the rates charged for such services;
> c. whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> d. whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> e. with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> f. whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.330(a)(3).

---

[47] 11 U.S.C. § 330(a)(1)(A) and (B)
[48] *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,* 50 F.3d 253, 260 (3d Cir. 1995); *Am. Ctr. for Civil Justice, Religious Liberty & Tolerance, Inc. v. Katchen*, 2020 WL 4060178 (D.N.J. July 20, 2020)

The failure of an applicant to sustain the burden of proof as to the reasonableness of the compensation may result in the denial of the request.[49]  Because administrative claims go to the front of the line, courts narrowly construe such allowances to protect other creditors.[50]  The court reviewed the time detail submitted and the objections filed against this backdrop.

When reviewing a fee application for an attorney representing a trustee, the court must be careful to ensure that no purely trustee duties[51] are billed as attorney work. It is firmly established that "[a]n attorney is never entitled to professional compensation for performing duties which the statute imposes upon the trustee."[52] It is "[o]nly when unique difficulties arise may compensation be provided for services which coincide or overlap with the trustee's duties...."[53]

In the Second Application for Compensation, there are numerous examples of work billed by the attorney that are properly characterized as trustee work rather than attorney for the trustee work. For example, there is considerable time billed to

---

[49]  *In re Beverly Mfg. Corp.*, 841 F.2d 365 (11th Cir. 1988)

[50]  *In re Molnar Bros. Systems, Inc.*, 200 B.R. 558 (Bankr. D.N.J. 1996)

[51] The following services are generally considered trustee duties for which attorney's fees are not allowed: "Services relating to the sale of the debtor's assets; Collection of accounts due; Examination of the debtor's papers; Preparation of notices and advertisements for the sales of the debtor's assets, and license renewals; Routine telephone calls and correspondence with information seekers; Reduction of the estate to money; Payment of routine bills, including taxes; Arranging insurance coverage; Arranging for appraisals of the estate; Corresponding with creditors re documentation of claims; Reviewing title reports; Preparing and filing objections to claims; Preparing application for employment of professional; Acting as liaison with special counsel." *In re McKenna*, 93 B.R. 238, 241 (Bankr. E.D. Cal. 1988)

[52] *In re Garcia*, 317 B.R. 810, 816 (Bankr. S.D. Cal. 2004), *aff'd in part, rev'd in part*, 335 B.R. 717 (B.A.P. 9th Cir. 2005) (quoting In re Shades of Beauty, Inc., 56 B.R. 946, 949 (Bankr. E.D.N.Y. 1986), *aff'd in part*, 95 B.R. 17 (E.D.N.Y. 1988))

[53] *In re United States Trustee*, 32 F.3d 1370, 1373 (9th Cir. 1994) (citations omitted)

communicating with creditors and review of claims. While some of these communications may have related to litigation and required attorney attention, the lack of detail in most of those time entries does not enable the court to draw that conclusion. Since communication with creditors and review of claims are quintessentially a trustee function, and since it is the burden of the applicant to prove these time entries were lawyer functions rather than trustee functions, an adjustment of $5,958 on that basis is appropriate. Likewise, there are numerous entries for time billed after the retention of the Kelly firm as attorneys for the trustee. The court can only assume that these services were trustee functions, since to assume otherwise is to assume inappropriate duplication of services. A trustee is certainly allowed to communicate with counsel, but that is a trustee function rather than a lawyer service. The court will make an additional adjustment of $399 on that basis. Finally, there are multiple time entries that contain insufficient detail to permit the court to conclude that the services were beneficial to the estate, billed at a reasonable rate or not duplicative. The court will make an additional downward adjustment of $1,427 on that basis.

In a letter filed September 17, 2020, the Objectors raised the issue that there are mathematical errors in the application for compensation and that the individual time entries add up to approximately $6,000 less than is being requested.[54] The next day, the Trustee filed a corrected fee application presumably to address that problem.[55] The corrected application suffers the same problem – the total at the end

---

[54] Doc 203
[55] Doc 204

of the time records states a total balance due of $50,793.15 for attorney fees and

$156.15 for expenses; however, the application seeks $56,900 for attorney fees and

$247.25 for expenses. As previously noted, the applicant bears the burden of

establishing the propriety of its request for compensation.[56] The Trustee has not

satisfied his burden in this regard, so the court must further reduce the fee

application by $6,106.85 for attorney fees and $91.10 for expenses.

These reductions result in a total downward adjustment of the Second

Application for Compensation of $13,890.85 and $91.10 for expenses. Fees will be

allowed in the amount of $43,009.15 and expenses will be allowed in the amount of

$156.15.

## First Interim Application for Compensation

In September 2019, this court approved Atkinson & DeBartolo's first interim

application for compensation awarding $27,049.00 in fees and $254.82 in

expenses.[57] The court notes that no objections to that application were filed. But,

because this case has been dismissed, the Second Application for Compensation,

although not so designated, must be considered the final fee application. As a result,

the court can reevaluate interim fees that have been awarded in light of the totality

of the circumstances of the case.

Bankruptcy professionals are not required to wait until the end of a case to

be paid. Section 331 of the Code, titled "Interim compensation," provides that a

---

[56] *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.,* 50 F.3d 253, 260 (3d Cir. 1995); *Am. Ctr. for Civil Justice, Religious Liberty & Tolerance, Inc. v. Katchen*, 2020 WL 4060178 (D.N.J. July 20, 2020)
[57] Doc 84

professional may apply for and be awarded compensation "not more than once every 120 days." An order granting interim compensation is not a final order.[58] Interim allowances are interlocutory in nature, and are "always subject to the court's re-examination and adjustment during the course of the case."[59] Awarding "interim" compensation under § 331 allows the court "to judge the propriety of the fees under § 330 with facts that may come to light after the payments are rendered."[60] The purpose behind making interim fee awards not final orders is to provide an enforcement mechanism for the § 330 limitations on compensation. In other words, a bankruptcy judge must ensure not only that each individual fee application it approves is reasonable, but also that the total fees awarded in the case are reasonable. As explained by the bankruptcy court in *Unicast*,

> The policy behind allowing "interim" compensation to professionals
> employed under § 327 is to provide for a compromise between the
> § 330 policy that a professional has properly earned the fees and
> has not taken advantage of the bankruptcy process, and the policy
> of allowing professionals to be paid at least timely enough that they
> can reasonably undertake the case. That is, because many of the factors
> to be considered in a § 330 fee award may not come to light until after
> such time as a professional would require compensation to be able to
> fund his or her own operations, the § 331 mechanism was developed to
> provide for both goals. Thus, a professional can be paid on a fairly
> timely basis, and reasonably expect to be able to retain those fees as

---

[58] *Continental Illinois Nat'l Bank & Trust Co. of Chicago v. Charles N. Wooten, Ltd. (Matter of Evangeline Refining Co.)*, 890 F.2d 1312 (5th Cir. 1989) (interim fee awards are not final and are subject to review at the conclusion of the case); *see also, In re Kearing*, 170 B.R. 1 (Bankr. D.D.C. 1994)

[59] *In re Callister*, 673 F.2d 305, 307 (10th Cir. 1982) (quoting 2 Collier on Bankruptcy ¶ 331.03 (15th ed. 1981)); *see also, In re Vermont Real Estate Investment Trust*, 26 B.R. 905, 909 (Bankr. D. Vt. 1983) (noting that payment of interim compensation is subject to the court's re-examination and adjustment during the course of the case)

[60] *In re Unitcast, Inc.*, 214 B.R. 992, 1002 (Bankr. N.D. Ohio 1997), *aff'd*, 219 B.R. 741 (B.A.P. 6th Cir. 1998)

long as he or she has not acted in the manner proscribed by § 330[61]

Although a review of interim fees at the end of a case was always permitted, changes made to the Bankruptcy Code in 1994 created a specific enforcement mechanism for situations in which a court finds that the interim fees awarded exceed the total amount of fees the court finds to be reasonable compensation. Section 330(a)(5) provides: "[t]he court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 331, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the estate."

Two aspects of this case lead the court to conclude that review of the previously granted fees is appropriate. One is that the Trustee in this case was awarded his full trustee commission, so it is important to ensure that no trustee activities were inadvertently compensated as attorney functions. The other is that Mr. Atkinson billed at the top end of the range of generally accepted hourly rates,[62] so the court must ensure that no amounts were billed at that rate that could or should have been performed by clerical staff or an attorney at a lower hourly rate.

The objection to the first interim application is a mixed bag. At the outset, the court notes that the elaborate numeration of specific objections to specific time entries fell out of sync at several points, making review of the extensive objection

---

[61] *Id.*

[62] See later in the opinion for a full discussion of the hourly rates for the Trustee's professionals.

more arduous than was strictly necessary. Nonetheless, the court reviewed each entry and attempted to ascertain the nature of the objection to each entry, based on loosely grouped categories that are themes in the objection.

Some whole categories of the objection are overruled. The objection that review of legal documents is a trustee function assumes that a trustee is a lawyer. While that happens to be the case here, that is not the standard for whether legal services are compensable. The objection that counsel for the trustee need not concern himself with litigation outside the bankruptcy court is likewise overruled. A lawyer in a case as complex and litigious as this one cannot be expected to provide services while wearing blinkers.

The objection to services relating to attempts to settle that were unsuccessful is categorically overruled because it applies an incorrect legal standard. The standard is not whether the services, in retrospect, did not benefit the estate, but whether a reasonable attorney would have undertaken them.[63] Although the Third Circuit has not expressly ruled on this issue, the leading bankruptcy treatise notes that "[t]he majority of courts have determined the 'necessity' of particular services from the perspective of the time that the services were rendered rather than based on hindsight after the services had been performed."[64] Since 1994, that concept has codified in § 330(a)(3)(C) ("whether the services were … beneficial at the time at which the service was rendered"). The settlement efforts here were reasonably

---

[63] *In re Smith*, 317 F.3d 918, 926 (9th Cir. 2002) ("services that are reasonably likely to provide an identifiable, tangible and material benefit to the debtor's estate can be compensated, even if they do not actually provide such a benefit")
[64] 3 *Collier on Bankruptcy,* ¶ 330.04[1] [b][iii] at 330–32 (1998)

undertaken at the time and not excessive. More to the point, it is bad policy and inconsistent with the policies underlying the Bankruptcy Code to punish an attorney for undertaking reasonable efforts to settle litigation.[65]

The Objectors argument that there were "wasteful, unnecessary communications by the Trustee and the Atkinson Firm with counsel for Readington and counsel for Bellemead, relating to the sewer capacity state court litigation"[66] is but one example of the inconsistent positions taken by the Objectors. It is *only* if the sewer capacity litigation were successfully concluded in the Debtor's favor that the Property could possibly be sold for the $5 million or above value that the Objectors claim it had and which formed the basis of the Objectors' belief that the Trustee was derelict in his duties by selling the Property at auction for $3 million. It is one of the many examples of the principals of the Debtor wanting to have their cake and eat it too.

Some other categories of objection are well taken. There is a wide-ranging failure to include enough detail to enable the court to determine whether services were trustee services or were reasonably rendered. There are many, many examples of time entries billing .1 hours for "left message" or "review" of perfunctory documents. There are some entries, such as review of claims, that are clearly trustee functions. There is attorney time that should have been billed at a lower rate. These shortfalls require a reduction of $4,798. In addition, there is time billed

---

[65] *Myers v. Martin (In re Martin)*, 91 F.3d 389 (3d Cir. 1996) (holding that settlements are favored in bankruptcy cases)
[66] Doc 216 at 7

at a full rate for travel, requiring a further reduction of $750. That leaves us with a total reduction of $5,548 off the previously awarded fee of $27,303.82. To the extent those fees have already been received by Atkinson & DeBartolo, the firm is directed to either refund those funds to the estate or reduce its total fees awarded by that amount pursuant to § 330(a)(5).

The Kelly Firm's request for compensation

The Kelly Firm, attorney for the Trustee, seeks fees totaling $54,240 and expenses in the amount of $1,552.85.[67] The Objectors take issue with both specific time entries, and, more generally, object on the grounds that the services went beyond the scope of the retention order and that some services did not benefit the bankruptcy estate. Again, the court has reviewed the time detail and overrules the objection to these fees in its entirety.

Prior to the order of July 25, 2020 expanding the scope of retention, the overwhelming majority of the time entries relate directly to defending the appeals in the District Court and Third Circuit Court of Appeals. The other entries relate to closing on the sale and the impact of a lis pendens, both of which relate directly to the concept of equitable mootness. Moreover, this was an extensively litigated case, and the parties appeared to have engaged in settlement efforts during the appeal process. An appellate lawyer must be fully versed with not only the history of the case, but all pending activity that may possibly be relevant to settlement efforts.

---

[67] Doc 208

The objection that certain of counsel's services did not benefit the estate applies the wrong standard. As previously discussed, litigation services for professionals retained on an hourly basis is not actual benefit to the estate, but whether those services were reasonably undertaken.  Determining whether compensation is necessary and reasonable, "requires only that the services in question had a reasonable likelihood of benefiting the estate at the time they were provided, not that they actually did provide a benefit."[68] Court are remarkably consistent in holding that a determination as to whether professionals services are necessary to the administration of the estate is made "in light of the facts known at the time the services were performed, and not on an after-the-fact basis using the benefit of hindsight".[69] As stated by the bankruptcy court in *In re Drexel Burnham Lambert Group, Inc.*[70]

> [T]he appropriate perspective for determining the necessity of the activity should be prospective: hours for an activity or project should be disallowed only where a Court is convinced it is readily apparent that no reasonable attorney should have undertaken that activity or project or where the time devoted was excessive. [ ] The Court's benefit of '20/20 hindsight' should not penalize professionals.[71]

---

[68] *In re Jankowski*, 382 B.R. 533, 545 (Bankr. M.D.  Fla. 2007) (citing In re American Metallurgical Products, Inc., 228 B.R. 146, 159 (Bankr. W.D. Pa. 1998))

[69] *In re Tri-State Plant Food Inc.*, 273 B.R. 250, 259 (Bankr. M.D.  Ala. 2002); *see also, In re Vista Foods USA, Inc.*, 234 B.R. 121, 130 (Bankr. W.D. Okla. 1999) (courts should not engage in an *ex post facto* analysis, "[r]ather the test is that the services must have appeared to have been reasonable at the time they were performed") (citing Grant v. Martinez, 973 F.2d 96, 99 (2nd Cir. 1992))

[70] 133 B.R. 13 (Bankr. S.D.N.Y. 1991)

[71] *Id.* at 23

Thus, courts are charged with conducting an objective inquiry with respect to a fee application, "'based upon what services a reasonable lawyer or law firm would have performed in the same circumstances.'"[72] The objection on this basis is a thinly veiled argument that SB did not agree with the litigation decisions of the Trustee.

There is not a single entry in the application of the Kelly Firm that suggests that the services were rendered without a reasonable basis in fact or law or with the intent to advance the interests anyone other than the creditors of this estate. For example, this court declined to adopt the Trustee's position on Norris McLaughlin's motion to dismiss, but the Trustee's position was worthy of the serious consideration this court gave it.

Finally, the Objectors argue that neither the Kelly Firm nor Atkinson & DeBartolo have established that their hourly rates are reasonable. During the course of this case, Mr. Atkinson billed at an hourly rate of $550 in 2018; $570 in 2019; and $590 in 2020. Mr. Kelly billed at an hourly rate of $450. It is curious what kind of non-hearsay evidence the Objectors believe might be presented on this issue. It is possible that the applicants could certify that they are familiar with hourly rates for the type of work that they did in the geographical area that they did, but it is not clear that certification would be more valuable than this court's familiarity with both of those factors. This court reviews hundreds of fee applications for services in the Trenton vicinage a year and is well aware of the hourly rates

---

[72] *In re Fleming Cos., Inc.*, 304 B.R. 85, 89 (Bankr. D. Del. 2003) (quoting *In re Ames Dep't Stores Inc.*, 76 F.3d 66, 72 (2d Cir. 1996)); *see also, In re Kohl*, 421 B.R. 115 (Bankr. S.D.N.Y. 2009) (same)

charged by bankruptcy professionals. This court is also quite familiar with the complexity and quality of the work done by these professionals in this case. This court (unlike, say, fee applicants) has no reason to inflate its perception of reasonable hourly rates. While it is true that it is the burden of fee applicants to establish that the hourly rates sought are reasonable, historically that has been done by disclosing the number of years the professional has been admitted and other professional accomplishments. These applicants have done that.[73] Those disclosures, along with the court's own knowledge of hourly rates in this area and the type of work done, are enough to meet that burden.[74] The Bankruptcy Appellate Panel for the First Circuit has noted that when evaluating an hourly rate a bankruptcy court may rely on its own knowledge and experience of prevailing fees in a particular market.[75]

Just by way of example, the court notes that Jay Lubetkin, who filed these objections on behalf of the Debtor's sole equity owner SB Building Associates Limited Partnership, has been admitted to the bar seven years fewer than Mr. Atkinson and bills at an hourly rate of $525. In his 2019 application to have his firm Rabinowitz, Lubetkin & Tully appointed as the attorney for the debtor in SB Building's own chapter 11 case,[76] one of the firm's attorneys was listed as billing $575 per hour. As another point of reference, the firm of Norris McLaughlin &

---

[73] Doc 218; Doc 219
[74] *In re Bailey*, 2009 WL 2167736, at *8 (Bankr. E.D.N.Y. July 15, 2009) (court determined a reasonable hourly rate based on its "familiarity with rates generally charged in this district for services of this type.")
[75] *In re Narragansett Clothing Co.*, 210 B.R. 493 (B.A.P. 1st Cir. 1997)
[76] 13-12682 VFP

Marcus, who previously represented SB Building in its Chapter 11 case, disclosed in its 2013 application to employ the firm that its members on the case would bill at rates up to $590.

Conclusion

The objections to the Trustee's commission are overruled. The court is granting the Trustee the full statutory commission and expenses as requested. The request for a 3% trustee commission on any funds ultimately disbursed to W.J. Casey Trucking & Rigging Co., Inc. is granted without further order. The request for a 3% trustee commission on any funds distributed to the trustee's professionals is denied. The objections to the Kelly Firm's application are overruled in their entirety and the fees and expenses are granted as requested. The objections to the Trustee's First Interim Application for Compensation are granted in part and denied in part.  The previously awarded fee of $27,303.82 is hereby reduced by $5,548. The objections to the Trustee's Second Application for Compensation is granted in part and denied in part. Fees are allowed in the amount of $43,009.15 and expenses are allowed in the amount of $156.15.


*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
United States Bankruptcy Judge

Dated: January 11, 2021